Stephen M. Reynolds CSB 148902
**Reynolds Law Corporation**
PO Box 73379
Davis, CA  95617
530 297 5030 telephone
sreynolds@lr-law.net email


Linda Deos CSB 179170
**Deos Law PC**
428 J Street, 4th Floor
Sacramento, CA 95814
916 442 4442 voice
916 583 7693 facsimile
Linda@Deoslaw.com

*Attorneys for Debtor Youssef Corporation*

**UNITED STATES BANKRUPTCY COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| In re: | Case No. 24-25864-B-11 |
| Youssef Corporation | Chapter 11 |
| Debtor. | Judge  Jaime |

**PLAN OF REORGANIZATION UNDER CHAPTER 11 SUBCHAPTER V OF THE BANKRUPTCY CODE**

  Youssef Corporation (the "**Debtor**" or "**Youssef Corporation")** the debtor and debtor in possession in the above-captioned chapter 11 case, by and through its counsel, hereby proposes its Plan of Reorganization (the "**Plan**") under Chapter 11 of the United States Code (the "**Bankruptcy Code**").

**ARTICLE I
SUMMARY**

  The Debtor has both secured and unsecured debt.  As of Petition Date, the Debtor had approximately $1,445,305 in secured debt obligations and $513,674 in unsecured claims.  The Debtor has three secured claims:[1] (1) Umpqua Bank holds a senior secured claim in the amount

---

[1] Debtor's Schedules reported Rewards Network as a secured creditor.  Proof of Claim No. 1 filed January 13, 2025

of $1,227,330 secured by business equipment, furniture, fixtures, cash and accounts. The Umpqua Bank loan is a Small Business Administration loan and is guaranteed by Debtor's principal Randy Sutton; (2) JP Morgan Chase has a junior secured claim secured by accounts, inventory and equipment in the amount of $152,108.71; (3) WSFS Bank holds a Business Equipment Lease/Purchase agreement secured by purchase money security interest in a Sweeper. Debtors remaining debt is unsecured, some of which is personally guaranteed by Randy Sutton.

By the Plan, the Debtor proposes to (a) pay Umpqua Bank the value of Umpqua Bank's collateral as of the effective date of the Plan, with monthly payments as described below; (b) pay JP Morgan Chase the value of JP Morgan Chase's collateral as of the effective date of the Plan; (c) pay WSFS Bank the remaining payments due under the lease/purchase agreement; and (d) pay general unsecured claims, including the unsecured portion of partially secured creditors pro rata 1 percent of their allowed claims over the life of the Plan. Equity Interests will be reinstated, provided, however, that the Debtor may not make any payments on account of Equity Interests until the completion of the Plan. Mr. Sutton, the principal, may continue to be employed as a salaried employee. The treatment of Claims and Equity Interests in each class is summarized[2] as follows:

| Class | Type of Allowed Claim or Equity Interest | Impairment/Voting (see explanation below of Voting in a Subchapter V case) | Recovery/ Treatment |
|---|---|---|---|
| 1 | **Secured Creditor:** Umpqua Bank | Impaired Entitled to Vote | • Make monthly payments at the Wall Street Journal Prime Rate on a 15-year amortized Note, all due in 10 years<br>• Retains security interest<br>• All due and payable upon sale or refinance per original Note terms |

---

was filed as an unsecured claim.

[2] To the extent of any inconsistencies between this summary and the terms of the Plan, the Plan controls.

| | | | if sold or refinanced within the Plan term. |
|---|---|---|---|
| Class 2 | **Secured Creditor:** JP Morgan Chase | Impaired Entitled to Vote | • Pay the value of creditor's collateral<br>• Retains security interest |
| Class 3 | **Secured Creditor:** WSFS Bank | Unimpaired Not Entitled to Vote | • Pay in full.<br>• Pay per Contract Terms<br>• Retains security interest |
| Class 3 | **All General Unsecured Claims** | Impaired Entitled to Vote | • Pay one percent pro rata to allowed General Unsecured and |
| Class 4 | **Equity Interests in the Debtor** | Impaired Entitled to Vote | • Existing Equity Interests will be reinstated, provided, however, that the Debtor may make no payments on account of Equity Interests until the completion of the Plan. Equity Security Holders may receive salary and benefits for services performed. |

     **All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding their precise treatment.** Creditors should be aware that the current Chapter 11 case is a Subchapter V Chapter 11 case. Bankruptcy Code Section 1191 provides that the court shall confirm a plan if all of the applicable requirement of Bankruptcy Code Section 1129(a) are met other than paragraphs (8), (10, and (15) so long as if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interest that is impaired under, and has not accepted, the plan. Accordingly a ballot shall be transmitted to every impaired creditor.

     **YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

## ARTICLE II
## HISTORY OF THE DEBTOR

Section 1.01    **Filing of the Debtor's Chapter 11 Cases**

Debtor filed a voluntary Chapter 11 case under Subchapter V of the Bankruptcy Code on December 31, 2024.  Debtor was incorporated as a California corporation on July 12, 2011 and continues to operate.  Debtor continues to operate as a Subchapter V Chapter 11 Debtor. Walter Dahl has been appointed as Subchapter V Trustee and continues to serve in that capacity.  Debtor has elected Subchapter S tax status.

**Nature of the Debtor's Business and Events Leading to Chapter 11 Case**

Debtor is a California Corporation operating as Rick's Dessert Diner in midtown Sacramento, California.  Randy Sutton is the current Chief Executive Officer of the Debtor.  Mr. Sutton purchased the shares of the Debtor in 2022 using approximately $1,500,000 in bank financing.  The purchase was financed by a Small Business Administration 7A ("SBA") loan through Umpqua Bank.    Rick's Dessert Diner has been a midtown Sacramento tradition since 1986 and currently operates from rented premises at 2401 J Street, Sacramento, California. Since the acquisition of Youssef Corporation current management has been dealt a number of unforeseeable and very substantial organizational increased-costs-related challenges, including the following:

- Increased labor and materials costs which, while common to all restaurants, are acutely impacting bakeries owing to the increased price of eggs[3] and cocoa/chocolate, among other key bakery ingredients.

---

[3] E.g., Surging egg prices are pummeling America's bakeries, CNN (Feb. 23, 2025), available at https://www.cnn.com/2025/02/23/economy/surging-egg-prices-bakeries/index.html

- A significant increase in the Umpqua Bank/SBA financing, which has an adjustable interest rate.[4]

- A very significant unanticipated rent increase of over $3,977.96 a month in 2024, in addition to a $4500.00 monthly "CAM" charge that went previously unnoticed, unpaid and uncollected by the lessor, the prior owners, and current management – for a total increased monthly lease obligation of $8477.96.

- Debtor's workers' compensation insurance monthly premium increased by approximately $2,000 a month in view of loss reserves on a claim made by an employee for an injury occurring prior to Mr. Sutton purchasing the company.

**Legal Structure and Ownership**

The Debtor is a California corporation. Randy Sutton is the sole shareholder. Mr. Sutton has decades of experience owning and managing restaurants and bakeries both as an owner and in corporate settings.

**Debtor's Assets**

Attached as Appendix A hereto is the List of Debtor's Assets and Liquidation Analysis, which contains a detailed breakdown of the Debtor's assets. The following description summarizes the Debtor's assets.

(a)    <u>Rented Real Property</u>

The Debtor owns no real property. Debtor leases a restaurant dining room, kitchen and storage space at 2801 J Street, Sacramento, California.

---

[4] The interest rate was the Wall Street Journal Prime Rate plus 2.25%.

(b)     Personal Property

The Debtor's personal property consisted at the time of filing of bank accounts and a single vehicle used primarily to pick up purchased supplies and to make deliveries.  The total scheduled value was $68,924.99 vehicles and equipment used in the operation of the Debtor. A more complete and itemized list of the Debtor's assets is attached as Appendix A hereto.

The Debtor maintains a debtor-in-possession bank account, and the amount in this account fluctuates on a daily basis.  The Debtor will continue to use the cash in its account or other accounts to operate after the Effective Date.

(c)     Causes of Action

The Debtor may have certain Causes of Action, including all Avoidance Actions, some of which are described as follows:

(1)     Preference Causes of Action

Under the Bankruptcy Code, a debtor may recover certain preferential transfers of property, including cash, made while insolvent during the 90 days immediately prior to the filing of its bankruptcy petition with respect to pre-existing debts, to the extent the transferee received more than it would have in respect of the pre-existing debt had the debtor been liquidated under Chapter 7 of the Bankruptcy Code.  In the case of "insiders," the Bankruptcy Code provides for a one-year preference period.  There are certain defenses to such recoveries.  Transfers made in the ordinary course of the debtor's and transferee's business according to the ordinary business terms in respect of debts less than 90 days before the filing of a bankruptcy are not recoverable.  Additionally, if the transferee extended credit subsequent to the transfer (and prior to the commencement of the bankruptcy case), such extension of credit may constitute a defense to recovery, to the extent of any new value, against an otherwise recoverable transfer of property.  If a transfer is recovered by the debtor, the transferee has an unsecured claim against the debtor to the extent of the recovery.

Although the Debtor and its estate reserve the right to prosecute preference, the Debtor will or will not purse the preference Causes of Action in the exercise of its business judgment and in consultation with its attorneys.  The Debtor assigns minimal value to the Causes of Action (although it reserves all rights with respect thereto) because most of its pre-Petition Date transfers

were made in the ordinary course of business, were covered by the provision of subsequent new value, or were intended to be and were contemporaneous exchanges for new value.

(2)     Fraudulent Transfer Causes of Action

Under the Bankruptcy Code and various state laws, a debtor may recover certain transfers of property, including the grant of a security interest in property, made while insolvent or which rendered the debtor insolvent.  The Debtor is not aware of any such transfers.  However, the Debtor and its estate reserve the right to pursue fraudulent transfer Causes of Action if facts come to light which show that such Causes of Action exist.

(3)     Causes of Action Generally

The list of Causes of Action above is not exhaustive.  The Debtor reserves its right to identify and bring Causes of Action based on preferences, fraudulent transfers, post-petition transfers, other Avoidance Actions, and any other actions.  The Debtor has conducted a limited analysis of potential recoveries under Chapter 5 of the Bankruptcy Code.  Any and all avoidance actions and rights pursuant to sections 542, 543, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and all causes of action under state, federal or other applicable law shall be retained and may be prosecuted or settled by the Debtor.

Under the Plan, the Debtor's rights to object to all Claims and Interests asserted against the Estate and all of the Debtor's Causes of Action, including without limitation (1) the Causes of Action asserted in any adversary proceeding or other litigation is pending as of the Confirmation Date; and  (2) any and all other Avoidance Actions and other Causes of Action that the Debtor holds prior to the Confirmation Date, including, without limitation, Causes of Action for unpaid accounts receivable and fraudulent transfer, shall vest in the Debtor after the Confirmation Date.

Unless a Cause of Action against any Person is expressly waived or released in the Plan or any Final Order of the Bankruptcy Court, the Debtor expressly reserves such Cause of Action for later adjudication (including, without limitation, Causes of Action not specifically identified or which the Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts and circumstances that may change or be different from those that the Debtor now believes to exist) and, therefore, no

preclusion doctrine, including without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claims preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such Causes of Action upon or after the confirmation or consummation of the Plan, or the Confirmation Order, except where such Claims or Causes of Action have been expressly released in the Plan or any other Final Order of the Bankruptcy Court.

### ARTICLE II
### DEFINITIONS

Capitalized words not otherwise defined in this Plan have the following meanings:

(1)      **Administrative Expense Claim** means any Claim arising from the administration of the Debtor's chapter 11 case as provided in section 503 of the Bankruptcy Code or that is entitled to priority under section 507(a)(1) of the Bankruptcy Code, including, without limitation,(a) fees and expenses of the Debtor's professionals Allowed pursuant to an Order of the Bankruptcy Court, and (b) all fees and charges assessed against the Debtor's estate pursuant to 28 U.S.C. § 1930.

(2)      **Allowed or Allowance** means with respect to Claims (a) any Claim (i) for which a Proof of Claim has been timely filed on or before the applicable Claims Bar Date or (ii) that is listed in the Debtor's Schedules as of the Effective Date as not disputed, not contingent, and not unliquidated whether or not a Proof of Claim has been timely filed; <u>provided that</u>, in each case, any such Claim shall be considered Allowed only if and to the extent that no objection to the allowance thereof has been filed by the Effective Date or such an objection has been withdrawn or the Claim has been thereafter Allowed by a final non-appealable order; or (b) any Claim Allowed pursuant to the Plan. Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder.

(3)      **Avoidance Action** means all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtor or its estate under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies under sections 510, 542, 543, 544, 545, 547, 548,549, 550, 551, 553(b) and 724(a) of the Bankruptcy Code and other similar state law claims and causes of action.

(4)      **Bankruptcy Code** means title 11 of the United States Code as in effect on the Petition Date.

(5)      **Bankruptcy Court** means the United States Bankruptcy Court for the Eastern District of California, Sacramento Division.

(6)      **Causes of Action** means all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities, arising on, prior to or after the Petition Date, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, including Avoidance Actions, asserted, or which may be asserted, by or on behalf of the Debtor and/or the Debtor's estate, whether or not pending on the Effective Date or prosecuted thereafter against any person, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct,

indirect, derivative or otherwise and whether asserted or unasserted as of the Confirmation Date.

(7)    **Claim** has the meaning set forth in section 101(5) of the Bankruptcy Code.

(8)    **Claims Bar Date** means (a) June 30, 2025 for a Proof of Claim filed by a government unit, (b) the Confirmation Date for all Administrative Expense Claims other than professionals employed by the Debtor; (c) 10 days after the entry of the Confirmation Order for all Claims arising from the rejection of executory contracts rejected pursuant to the Plan; and (d) March 11, 2025 for a Proof of Claim for all other Claims.

(9)    **Confirmation Date** means the date that the Confirmation Order becomes a final, non-appealable order and on which no stay of the Confirmation Order is in effect.

(10)    **Confirmation Order** means the order entered by the Bankruptcy Court confirming the Plan.

(11)    **Debtor** means the chapter 11 debtor in this case, Youssef Corporation both before and after the Effective Date.

(12)    **Disallowed** means a Claim for which either (a) the Bankruptcy Court has entered a final non-appealable order that such Claim is disallowed or (b) any Claim for which a Proof of Claim was not filed by the applicable Claims Bar Date.

(13)    **Disputed** means a Claim for which a Proof of Claim was filed prior to the applicable Claims Bar Date that has not been Allowed or Disallowed by a final non-appealable order and as to which the Debtor or another party in interest has filed an objection prior to the Effective Date.

(14)    **Effective Date** means the first business day 14 days after the entry of the Confirmation Order.

(15)    **Equity Interest** means the rights of the holders of the common stock issued by the Debtor and outstanding immediately prior to the Petition Date.

(16)    **General Unsecured Claim** means any Claim that is not an Administrative Expense Claim, Priority Claim, Secured Claim, that is not given priority under section 507(a) of the Bankruptcy Code or otherwise or subject to subordination under section 510 of the Bankruptcy Code.

(17)    **Petition Date** means December 31, 2024.

(18)    **Plan Term** means thirty-six months after the first Plan payment following the Effective Date.

(19)    **Plan Disbursing Agent** is the Debtor whether the Plan is confirmed under 11 U.S.C. §1191(a) or 11 U.S.C. §1191(b). As Plan Disbursing Agent, the Debtor will make its plan payments directly to its creditors, and the Subchapter V Trustee will not make the plan payments.

(20)    **Priority Claim** means a Claim that is entitled to priority in payment under section 507(a) of the Bankruptcy Code that is not an Administrative Expense Claim or a Priority Tax Claim.

(21)   **Priority Tax Claim** means a Claim that is entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code; provided, however, that any Claim on account of any penalty arising with respect to or in connection with a Priority Tax Claim that does not compensate the Holder for actual pecuniary loss shall be treated as a General Unsecured Claim.

(22)   **Proof of Claim** means a proof of claim filed with the Bankruptcy Court.

(23)   **Secured** or **Secured Claim** means a Claim that is secured by a lien on property in which the Debtor has an interest or that is subject to a valid right of setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in such Debtor's interest in such property or to the extent of the amount subject to such valid right of setoff, as applicable, as determined under section 506 of the Bankruptcy Code.

(24)   **Unsecured** means a Claim against the Debtor that is not Secured.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

Section 3.01

**Class 1. Umpqua Bank Secured Claim**

Class 1 consists of the secured claim of Umpqua Bank.  Umpqua Bank holds a secured claim in the business equipment, furniture, fixtures, cash and accounts.

**Class 2. JP Morgan Chase Secured Claim**

Class 2 consists of the secured claim of JP Morgan Chase which holds a junior priority secured claim in accounts, inventory and equipment

Class 3. **WSFS Bank Secured Claim**

Class 3 consists of the secured claim of WSFS bank which holds as a Business Equipment Lease/Purchase agreement secured by a Sweeper.

Class 4 **General Unsecured Claims**

Class 4 consists of all general unsecured claims including the under secured portion of Classes 1, 2 and 3.

**Class 5. Equity Interests**

Class 4 consists of Randy Sutton as equity security holder.

## ARTICLE IV
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

Section 4.01   **Unclassified Claims**

Consistent with section 1123(a)(1) of the Bankruptcy Code, administrative expense claims, and priority tax claims are not classified in this Plan.

### Section 4.02    Administrative Expense Claims

Each holder of an Allowed administrative expense claim under section 503 of the Bankruptcy Code will be paid in full in cash on the Effective Date or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

### Section 4.03    Priority Tax Claims

Each holder of a Priority Tax Claim will be paid in full in cash on the Effective Date. The Debtor believes that it has no non-current Priority Tax Claims.

### Section 4.04    Priority Employee Wage Claims

Debtor believes that there are no priority wage claim holders.

## ARTICLE V
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

Claims and interests will be treated as follows under this Plan:

### Section 5.01    Class 1. Umpqua Bank Secured Claim

(a)    Treatment

This Class will be paid the value of the secured portion of its' claim over the Plan term.

Retains security interest. Class One shall receive regular monthly payments of $\underline{5}$ which equals the amount of the Proof of Claim filed amortized over 15 years at the current Wall Street Journal Prime Rate of 7.5%. The Note shall be all due and payable in 10 years. All due and payable upon sale or refinance per original Note terms if sold or refinanced within the Plan term.

(b)    Impairment

Impaired.

(c)    Voting

Because Class is impaired, it will be entitled to vote on the Plan.

---

[5] The exact monthly payment to be determined by the Wall Street Journal Prime Rate on the date of the final confirmation hearing on Debtor's Plan. The claim may also be adjusted to reflect negative amortization, if any, between the petition date and the confirmation hearing.

Section 5.02    **Class 2. JP Morgan Chase**

(a)     <u>Treatment</u>

Debtor intends to file a motion to value the collateral of JP Morgan Chase at zero as it is junior to the Class One claim. The JP Morgan Chase claim will be treated as a general unsecured claim.

(b)     <u>Impairment</u>

Class 2 is impaired.

(c)     <u>Voting</u>

Because Class 2 is impaired, it will be entitled to vote on the Plan.

Section 5.03    **Class 3. WSFS Bank**

(a)     <u>Treatment</u>

Debtor shall continue to make monthly payments pursuant to the original loan terms.

(b)     <u>Impairment</u>

Class 3 is unimpaired.

(c )     <u>Voting</u>

Because Class 3 is unimpaired, it will not be entitled to vote on the Plan.

Section 5.04    **Class 4. General Unsecured Claim**

(a)     <u>Treatment</u>

Holders of General Unsecured Claims including the holders of the unsecured portion of secured claims shall receive quarterly payments of their pro rata share of payments totaling one percent (1%) of all allowed general unsecured claims. Debtor, acting as disbursing agent may, at Debtor's discretion, may hold claims entitled to less than $15.00 for later distribution.

(b)     <u>Impairment</u>

Class 4 is impaired.

(c)     <u>Voting</u>

Because Class 4 is impaired, it will be entitled to vote on the Plan.

.

Section 5.05    **Class 5. Equity Interests.**

(a)    Treatment

All Equity Interests will be reinstated as they were prior to the Petition Date, provided, however, that the Debtor may not make any payments on account of Equity Interests until the completion of the Plan. Any provisions of any Equity Interest or agreements with holders of Equity Interests requiring mandatory payments of profits will be permanently rejected. The Debtor will make no distributions to holders of Equity Interests unless and until all payments required under this Plan have been paid in full.

(b)    Impairment

Class 5 is impaired.

(c)    Voting

Because Class 5 is impaired, it will be entitled to vote on the Plan.

**ARTICLE VI**
**DISPUTED CLAIMS**

Section 6.01    **Preservation of Debtor's Rights**

After the Effective Date, the Debtor shall have and retain all rights and defenses the Debtor had with respect to any Claim immediately prior to the Effective Date except with respect to any Claim deemed Allowed under the Plan. All resolved Claims Allowed prior to the Effective Date under a final non-appealable order of the Bankruptcy Court under Bankruptcy Rule 9019 or otherwise shall be binding on all parties.

Section 6.02    **Amendments to Claims/Late Claims**

After the Confirmation Date, a Claim may not be filed or amended without the authorization of the Bankruptcy Court and, even with such Bankruptcy Court authorization, may be amended by the holder of such Claim solely to decrease, but not to increase, the face amount thereof. Except as otherwise provided in this Section, any new or amended Claim filed after the Confirmation Date shall be deemed Disallowed in full and expunged without any action by the Debtor, and the Debtor will make no distribution on account thereof.

Section 6.03    **Objections to Claims**

An objection to the Allowance of a Claim shall be in writing and must be filed by a party in interest or the Debtor on or before the Effective Date. Any objection made by any party in interest who is not the Debtor will be done at that party's own expense. The Debtor will prosecute any objection brought by the Debtor until determined by a final non-appealable order unless the Debtor (a) compromises and settles such objection to a Claim or (b) withdraws such objection.

Section 6.04    **Delay of Distribution on Disputed Claims**

No distribution will be made on account of any Disputed Claim unless and until such Claim is Allowed.

Section 6.05    **Settlement of Disputed Claims**

The Debtor will have the power and authority to settle and compromise any Disputed Claim subject to Bankruptcy Court approval under Rule 9019 of the Federal Rules of Bankruptcy

Procedure. For administrative convenience, the Debtor will have authority to settle any Disputed Claim in an Allowed Claim of less than $15,000.00 without approval of the Bankruptcy Court.

Section 6.06   **Claims Estimation**

At Debtor may at any time request that the Bankruptcy Court estimate any Claim under section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.

The Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. In the event that the Bankruptcy Court estimates any such Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

**ARTICLE VII**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Section 7.01   **Assumed Executory Contracts and Unexpired Leases**

Except as otherwise set forth herein, as of the Effective Date, all Executory Contracts of the Debtor shall be deemed rejected unless such contract (a) was previously assumed or rejected by the Debtor; (b) previously expired or terminated pursuant to its terms or applicable law; (c) is the subject of a motion to assume or reject filed by the Debtor under section 365 of the Bankruptcy Code pending as of the Effective Date; or (d) is specifically designated on the following table of executory contracts to be assumed. The proposed cure amount for an Executory Contract or unexpired lease that is assumed pursuant to the Plan shall be zero dollars unless otherwise indicated in the following schedule. The Debtor assumes only the following executory contracts or unexpired leases effective on the Effective Date of this Plan, with the following cure amounts payable on the Effective Date of this Plan:

| Name of Party | Executory Contract or Unexpired Lease | Cure Amount |
|---------------|---------------------------------------|-------------|
| PHC Property Management | Lease of Business Premises | $0.00 |
| PHC Property Management | Building Parking | $0.00 |

**ANY HOLDER OBJECTING TO THE ABOVE CURE AMOUNTS OR ASSUMPTION OF SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE MUST FILE AN OBJECTION IN THE BANKRUPTCY COURT AND SERVE IT ON THE DEBTOR PRIOR TO THE ENTRY OF THE CONFIRMATION ORDER.**

Any counterparty to the above executory contracts or unexpired leases who fails to file an objection to the proposed cure amounts or assumption prior to the entry of the Confirmation Order will be deemed to have accepted such cure amount in full satisfaction and cure of all defaults and other amounts due through and including the Effective Date, and will have no further claim against the Debtor therefor; further such counterparties are deemed to accept the assumption of their executory contract or unexpired lease by the Debtor and will hereby waive all rights and defenses to assumption, adequate assurance of future performance, or otherwise.

Section 7.02 **Rejected Executory Contracts and Unexpired Leases**

The Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases not expressly assumed under Section 7.01 above upon entry of the Confirmation Order. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 10 days after the entry of the Confirmation Order.

Section 7.03 **Continuation of Insurance Policy Coverage**

From and after the Effective Date, each of the Debtors' insurance policies in existence as of the Effective Date shall be reinstated and continued in accordance with their terms and, to the extent applicable, shall be deemed assumed by the Debtor pursuant to section 365 of the Bankruptcy Code. Nothing in the Plan shall affect, impair or prejudice the rights of the insurance carriers or the Debtor under the insurance policies in any manner, and such insurance carriers and Debtor shall retain all rights and defenses under such insurance policies, and such insurance policies shall apply to, and be enforceable by and against, the Debtor in the same manner and according to the same terms and practices applicable to the Debtor, as existed prior to the Effective Date.

## ARTICLE VIII
## MEANS FOR IMPLEMENTATION OF THE PLAN

Section 8.01 **Re-vesting of Property of the Estate**

On the Effective Date, all assets of the Debtor's estate, including all real and personal property, all Causes of Action, interests, claims, choses in action, and rights under any contracts (executory or otherwise), against any person will re-vest and be transferred to the post-Effective Date Debtor. The Debtor will remain in possession of all other assets, including its business and will continue to sell its products through its existing marketing channels while seeking to incrementally increase its sales through a measured growth model that emphasizes profitability.

Section 8.02 **Continued Corporate Existence of Debtor**

From and after the Effective Date, the Debtor shall exist and continue to exist as a separate legal entity, with all powers in accordance with the laws of the State of Delaware and shall be governed by the pre-Petition Date operating agreement. The Debtor shall have all of the powers of such a legal entity under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger, conversion, dissolution or otherwise) under applicable law. On and after the Effective Date, the Debtor may freely enter into contracts, operate its business and may use, acquire, and dispose of property and compromise, or settle any post-Effective Date claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order.

Section 8.03 **Retention and Re-vesting of Causes of Action**

The Debtor will retain (or hereby be given) standing and authority to prosecute all Causes of Action. The Debtor hereby expressly reserves and will retain or be re-vested with all of Causes of Action, and, therefore, in each case, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppels (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Plan or the Confirmation Order, except where such Causes of Action have been expressly released in the Plan or any final non-appealable order. In accordance with section 1123(b) of the Bankruptcy Code, the Debtor may enforce all rights to commence and pursue any and all of the Causes of Action, and the Debtor's rights to commence, prosecute, or settle any such Causes of Action shall be preserved, notwithstanding

entry of the Confirmation Order or the occurrence of the Effective Date. No person may rely on the absence of a specific reference in the Plan to any Cause of Action against it as any indication that the Debtor will not pursue any and all available Causes of Action against it. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtor may hold against any person shall vest in the Debtor. The Debtor may bring all such Causes of Action in the Bankruptcy Court or such other court of competent jurisdiction in its sole discretion. The Debtor will have and is hereby given authority to settle all Causes of Action without prior approval of the Bankruptcy Court.

Section 8.04   **Wherewithal to Paying Claims under the Plan and Reorganization Efforts**

The Debtor has the financial wherewithal to execute the Plan. Exhibit B to this Plan contains Quarterly Projections of Revenue, Expenses and the Distributions proposed under the Plan.

The Debtor will use the cash generated from operation of its business to make payments directly to holders of Allowed Claims and meet its responsibilities on its assumed executory contracts and leases on the terms and conditions provided in this Plan. The Debtor will keep a ledger showing the balance of each Allowed Secured Claim as well as the payments to the General Unsecured claims Plan payments are completed.

The Debtor will provide additional evidence supporting its wherewithal to fulfil its obligations under this Plan at the Hearing on Confirmation.

Section 8.05   **Post-Effective Date Management and Professionals**

In accordance with section 1129(a)(5) of the Bankruptcy Code, from and after the Effective Date, the initial officers and directors of the Debtor will be as follows:

| Name | Position |
|------|----------|
| Randy Sutton | President, CEO |

The Debtor will retain Linda Deos and Deos Law PC as counsel after the Confirmation Date to assist the Debtor in any bankruptcy-related matters and such other matters as are appropriate. Deos Law PC will continue to charge its customary rates as agreed upon from time to time by the Debtor and Deos Law PC but will not be required to submit fee applications or otherwise be employed under the Bankruptcy Code, and the Debtor may pay Deos Law PC without notice, a hearing, or approval by the Bankruptcy Court.

After the Confirmation Date, the Debtor will hire, fire, retain, or employ such other professionals as it deems advisable in the reasonable exercise of its business judgment without the need to seek approval of the Bankruptcy Court. The Debtor will compensate its professionals for any services provided after the Confirmation Date in the ordinary course of its business without the need for Bankruptcy Court approval.

**ARTICLE IX**
**MISCELLANEOUS AND GENERAL PROVISIONS**

Section 9.01   **Definitions and Rules of Construction.**

Except as otherwise provided in this Plan, the definitions and rules of construction set forth in sections 101 and 102 of the Bankruptcy Code apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

Section 9.02   **Severability**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

Section 9.03   **Binding Effect**

The rights, obligations, limitations, and injunctions of, for, or against any person or entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

Section 9.04   **Controlling Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of California govern this Plan and any agreements, documents, and instruments executed in connection with this Plan.

Section 9.05   **Retention of Bankruptcy Court Jurisdiction**

The Bankruptcy Court will retain and have exclusive jurisdiction over any matter arising under the Bankruptcy Code arising in or related to the Debtor's chapter 11 case or the Plan, or that relates to any of the following:

(1)   consistent with Article VII, hereof, to resolve any matter related to the assumption or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable and to hear and determine any Claim arising therefrom;

(2)   to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan;

(3)   to determine all motions, adversary proceedings, applications, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Debtor prior to or after the Effective Date, including resolution of all Causes of Action, including Avoidance Actions;

(4)   to ensure that distributions to holders of Allowed Claims are accomplished as provided in the Plan;

(5)   to hear and determine any timely objection to a Claim or Proof of Claim;

(6)   to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

(7)   to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(8)   to consider any modification of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(9)   to hear and determine all applications for awards of compensation for services rendered and reimbursement of expenses incurred by the Debtor's professionals;

(j)   to hear and determine disputes arising in connection with or relating to the Plan, or the interpretation, implementation, or enforcement of the Plan, or the extent of any Entity's

obligations incurred in connection with or released under the Plan, unless such agreements or documents contain express enforcement or dispute resolution provisions to the contrary, in which case such provisions should govern;

(k)       to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

(l)       to determine any other matter that may arise in connection with or that is related to the Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection therewith, unless such agreements or documents contain express enforcement or dispute resolution provisions, in which case, such provisions should govern;

(m)       to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including, without limitation, any matter relating to tax refunds, and any request by the Debtor for an expedited determination of tax liability under section 505(b) of the Bankruptcy Code with respect to the Debtors, the Liquidating Trust, or the Liquidating Trust Claims Reserve, as applicable);

(n)       to hear any other matter or for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code; and

(o)       to enter a final decree closing the Chapter 11 Cases;

Section 9.06     **Retention, Employment, and Compensation of Debtor's Professionals Post-Confirmation**

On and after the date the Confirmation Order is entered, the Debtor may, in the ordinary course of business and without further notice to or action, order, or approval of the Bankruptcy Court, employ and retain such professionals (including attorneys, accountants, financial advisors, and other professionals and including Debtor's professionals employed during the chapter 11 case) as it in its reasonable business judgment deems appropriate and pay such in cash the reasonable and documented fees and expenses of the professionals or other fees and expenses incurred by the Debtor, for all fees and expenses incurred after the entry of the Confirmation Order including fees and expenses related to implementation and consummation of the Plan and all fees of the U.S. Trustee. From and after the date the Confirmation Order is entered, any requirement that professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code or any order of the Bankruptcy Court entered before the date the Confirmation Order is entered governing the retention of, or compensation for services rendered by, professionals after the date the Confirmation Order is entered shall terminate, and the Debtor may employ or pay any professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

Section 9.07     **Inconsistencies**

In the event of any inconsistency among the Plan, the Disclosure Statement, or any exhibit or schedule to the Disclosure Statement, the provisions of the Plan shall govern. In the event of any inconsistencies among the Plan and the Confirmation Order, the Confirmation Order shall control.

Section 9.08     **Subchapter V Trustee**

Section 1183(c) (1) contemplates the termination of the Subchapter V Trustee upon substantial consummation in a case confirmed under Section 1191(a). To the extent that the Subchapter V Trustee continues to have a role in this case after substantial consummation of the plan, it will be as a plan administrator and not as a statutory trustee.

Section 9.09 **Substantial Consummation**

Substantial consummation shall be considered to have occurred upon the first payments to creditors after plan confirmation pursuant to this plan and service of the Notice of Substantial Consummation as contemplated by 11 U.S.C. 1183(c)(2)

Section 9.10. **Unclaimed Distributions**

Any property to be distributed pursuant to the Plan, if not claimed by the distribute within one (1) year after the payment, shall be returned to the Debtor and become the property of the Debtor free and clear of any claims of any person.

Section 9.11. **Post-Confirmation Default and Cure**

In the event the Debtor becomes delinquent in duty or obligation under the Plan, the affected creditor shall provide written notice of such default to the Debtor and its counsel. The Debtor shall thereafter have fifteen (15) business days from receipt of said notice in which to cure the default and, if so cured, will not be considered a default. In the event such default remains uncured, the affected creditor or creditors shall be entitled to take such action as is appropriate. The Debtor or such creditor shall have the right to bring the issue of default before the Bankruptcy Court. At any hearing, the Bankruptcy Court may consider the reason for the default and the ability of the Debtor to cure the default in a reasonable period of time. The Bankruptcy Court may also consider conversion of the case to a Chapter 7 of the Bankruptcy Code or dismissal of the same is in the best interest of creditors.

# ARTICLE X
## DISCHARGE AND RELATED MATTERS

Section 10.01 **Discharge of Claims**

If the Plan is confirmed pursuant to 11 U.S.C. 1191(a), the Debtor will be discharged from any debt that arose before confirmation of the Plan, upon Substantial Confirmation as defined subject to the occurrence of the Effective Date, to the full extent specified in section 1141(d)(1)(A) of the Bankruptcy Code, except that the Debtor will not be discharged of any debt (i) imposed by the Plan; (ii) of a kind specified in section 1141(d)(6)(A) of the Bankruptcy Code if a timely complaint is filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in § 1141(d)(6)(B) of the Bankruptcy Code. Pending execution of this Plan and unless (a) the Court has otherwise expressly ordered; or (b) this Plan otherwise expressly provides, all creditors will continue to be stayed from proceeding against the Debtor or its assets.

Section 10.02 **Exculpation**

Debtor nor any of its respective members, officers, directors, employees, representatives, professionals or agents, will have or incur any liability to any Creditor for any act or omission in connection with or arising out of the Chapter 11 Case, including, without limitation, prosecuting confirmation of this Plan, consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for gross negligence, willful misconduct or fraud.

# ARTICLE XI
## MODIFICATION OF PLAN

Section 11.01 **Modification of Plan**

Subject to the restrictions on modifications set forth in section 1193 of the Bankruptcy Code, the Debtor reserves the right to alter, amend or modify the Plan before its substantial

consummation. Prior to the Effective Date, the Debtor may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court. Holders of Claims that have accepted the Plan shall be deemed to have accepted the Plan, as amended, modified, or supplemented, if the proposed amendment, modification, or supplement does not materially and adversely change the treatment of the Claim of such holder; provided, however, that any holders of Claims who were deemed to accept the Plan because such Claims were unimpaired shall continue to be deemed to accept the Plan only if, after giving effect to such amendment, modification, or supplement, the treatment of such Claims continues to be unimpaired.

## ARTICLE XII
## CONFIRMATION OF PLAN

The Debtor respectfully requests Confirmation of the Plan under section 1191(a) of the Bankruptcy Code. In the event that any impaired class of Claims (or class of Claims that the Court determines is impaired) shall fail to accept, or be deemed to reject, the Plan in accordance with section 1191(a) of the Bankruptcy Code, the Debtor reserves the right to (i) request that the Bankruptcy Court confirm the Plan in accordance with section 1191(b) of the Bankruptcy Code and/or (ii) amend the Plan, including amendment at the Confirmation Hearing. The Debtor respectfully requests Confirmation of the Plan under section 1191(b) of the Bankruptcy Code in such event.

Respectfully submitted,

Dated: March 31, 2025　　　　　　　　**Youssef Corporation**

By: _____
　　　　Randy Sutton
　　　　President, CEO

Dated: March 31, 2025　　　　　　　　**REYNOLDS LAW CORPORATION**

　　　　/s/ Stephen M. Reynolds
By: _____
　　　　Stephen M Reynolds

*Attorneys for Youssef Corporation.*

**Appendix A. Liquidation Analysis and Asset Description**

| | | |
|---|---|---:|
| Cash projected for June 30, 2025 – no reduction for liquidation | $ | 50,000 |
| Lease Security Deposit – likely no recovery in liquidation | $ | |
| Vehicle – 30% discount in liquidation | $ | 7,599 |
| Inventory (perishable food items) likely no recovery in liquidation | $ | |
| Machinery & Equipment –30% discount in liquidation | $ | 7,679 |
| Office Equipment | $ | 11,500 |
| Copyrights & trademarks | $ | 1,500 |
| **Liquidation Value of Assets** | **$** | **78,278** |

**Secured Claims[6]**

| | | |
|---|---|---:|
| Umpqua Bank (Class 1 per POC-7) | | $ 1,227,733.02 |
| 1.　JP Morgan Chase (Class 2 per POC-5) | | $　152,108.71 |
| **Total Secured Claims** | | **$ 1,379,841.73** |
| **Estimated Chapter 7 & Chapter 11 Administrative Priority Claims** | **$** | **35,000.00** |
| Total Claims to be paid prior to general unsecured creditors | | **$ 1,566,950.44** |

**Proposed Distributions Under the Plan**
Distributions will be Quarterly other than Classes which is monthly.

In a Chapter 7 liquidation there is no likely recovery for general unsecured creditors.

---

[6] Analysis assumes surrender of WSFS Bank Sweeper secured by Purchase Money Security Interest

**EXHIBIT B**

## MONTHLY PROJECTED INCOME & EXPENSE

|  | 250,000.00 |
| --- | --- |
| **Total Revenue** | **$250,000.00** |

**Expenses**

**PAYMENTS TO VENDORS**

**Ingredients Suppliers**

| PAYMENTS TO VENDORS/ INGREDIENTS SUPPLIERS | $86,496.57 |
| --- | --- |
| **EQUIPMENT & MAINTENANCE** | $8,156.33 |
| **ADMINISTRATIVE EXPENSES** | |
| Popmenu (Mo. Subscription, $249.00) | $3,058.27 |
| **PAYMENTS ON SECURED DEPT** | |
| UMQUA/SBA | $11,377.50 |
| **RENT/LEASE PAYMENTS** | $15,693.47 |
| **UTILITIES** | $996.87 |
| **INSURANCE** | $5,592.67 |
| **PAYROLL** | |
| All Employees | $102,808.40 |
| TAX PAYMENTS | |
| Payroll Taxes - Employee | |
| Payroll Taxes - Employer | $7,797.68 |
| Sales Taxes | |
| Bus. Property Taxes $3342.0/yr | $278.50 |
| Other Taxes(?) | |
| **PAYMENTS TO PROFESSIONALS** | |
| **Total Expenses** | **$242,256.26** |

| **Income** | **$7,743.74** |
| --- | --- |
| Income tax expense | |
| **Net Profit (Loss)** | **$7,743.74** |